IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BART J. CAVALIERO,               )
                                 )
        Plaintiff,               )
                                 )
        vs.                      )    Civil Action No. 09-190
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
        Defendant.               )

## MEMORANDUM OPINION

### I.   INTRODUCTION

Pending before the Court are cross-motions for summary
judgment filed by Plaintiff Bart J. Cavaliero and Defendant Michael
J. Astrue, Commissioner of Social Security.  Plaintiff seeks review
of final decisions by the Commissioner denying his claims for
disability insurance benefits ("DIB") under Title II of the Social
Security Act, 42 U.S.C. §§ 401 *et seq.* and supplemental security
income benefits ("SSI") under Title XVI of the Social Security Act,
42 U.S.C. §§ 1381 *et seq.*  For the reasons discussed below,
Defendant's motion is granted and Plaintiff's motion is denied.

### II.  BACKGROUND

#### A.   Factual Background

Plaintiff Bart J. Cavaliero was born on June 7, 1960.  He
completed the eleventh grade and eventually obtained his G.E.D. in
1979.  (Certified Copy of Transcript of Proceedings before the
Social Security Administration, Docket No. 5, "Tr.," at 63, 71.)
Between 1999 and 2005, Plaintiff's primary work experience was as

a carpenter and supermarket stock manager.

On August 31, 2005, Mr. Cavaliero fell forward over the handlebars of a mountain bike he was riding and struck his head. After emergency treatment in the Butler Memorial Hospital, he was taken to Allegheny General Hospital where he remained until September 2, 2005. The most serious injuries shown by CT scans and MRI examinations were a fracture of his C-5 spinous process, a disc bulge at C3-4, a disk herniation at C4-5, bilateral numbness in his upper extremities, multiple broken teeth, and lacerations of his mouth and face. Upon discharge he was prescribed a cervical collar to be worn at all times and was instructed not to participate in any strenuous activity, not to lift anything greater than five pounds, and to undergo physical therapy. (Tr. 112.)

In a follow-up examination on September 26, 2005, with Dr. J. Brad Bellotte, a neurosurgeon who had treated Mr. Cavaliero at Allegheny General, Dr. Bellotte noted numbness and tingling in Plaintiff's arms and hands. He had no medical insurance and therefore had been unable to attend physical therapy. At the time, Plaintiff was taking Neurontin and Percocet as needed for pain. Dr. Bellotte commented that the x-rays of Plaintiff's cervical spine had revealed severe degenerative changes and suggested that he continue to wear his cervical collar for the next seven to eight weeks. (Tr. 183-184.) Dr. Bellotte completed a Medical Assessment form for the Pennsylvania Department of Public Welfare indicating

2

that Plaintiff was temporarily disabled until at least January 2, 2006. (Tr. 146-147.)

At a second follow-up examination on November 28, 2005, Dr. Bellotte noted Plaintiff's continuing bilateral finger numbness, transient forearm numbness, and continuing neck pain and muscle spasms. He concluded Plaintiff had suffered a cervical spinal fracture with a herniated nucleus pulposus[1] but thought the cervical collar could be removed since there was full range of motion without pain in Plaintiff's neck. He cautioned Mr. Cavaliero that he should avoid any activities which increased the likelihood of even relatively minor trauma to his neck. He also discussed the possibility of surgery on his neck, but Plaintiff declined to consider that option. (Tr. 181-182.)

B. Procedural Background

On September 8, 2005, Mr. Cavaliero filed applications for supplemental security income and disability insurance benefits, alleging disability as of August 31, 2005, due to his spinal injury and a bulging disc which affected his hands and arms. (Tr. 58-60; 198-204; 66-81.) The Social Security Administration denied his applications on December 23, 2005, reasoning that although he could not return to his previous work, there were other jobs he could perform despite his physical limitations. (Tr. 32; 47-50; 192-196.)

---

[1] The nucleus pulposus is an elastic pulpy mass lying in the center of each spinal disc. See the dictionary at the National Institute of Medicine's on-line website, www.nlm.nih.gov/medlineplus (last visited June 10, 2009), "Medline Plus."

3

Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 21, 2007, before Judge William E. Kenworthy, in Pittsburgh, Pennsylvania. Mr. Cavaliero, who was represented by counsel, testified, as did an impartial vocational expert, Tania Shullo. Judge Kenworthy issued his decision on August 22, 2007, again denying benefits. (Tr. 17-25.) On December 8, 2008, the Social Security Appeals Council advised Mr. Cavaliero that it had chosen not to review the ALJ's decision, finding no reason under its rules to do so. (Tr. 6-8.) Therefore, the August 22, 2007 opinion became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), *citing* Sims v. Apfel, 530 U.S. 103, 107 (2000). On February 21, 2009, Plaintiff filed suit in this Court seeking judicial review of the ALJ's decision.

## C.   Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

## III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining

4

whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), *citing* Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, No. 03-3416, 2004 U.S.

5

App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), *citing* Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV. ANALYSIS

### A. The ALJ's Determination

In determining whether a claimant is eligible for supplemental security income, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe he is unable to pursue substantial gainful employment[2] currently existing in the national economy.[3] The impairment must be one which is expected to result in death or to have lasted or be expected to last not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(I); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000). To be granted a period of disability and receive disability insurance benefits, a claimant must also show that he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). The Commissioner does not

_____

[2] According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities." "Gainful work activity" is the kind of work activity usually done for pay or profit.

[3] A claimant seeking supplemental security income benefits must also show that his income and financial resources are below a certain level. 42 U.S.C. § 1382(a).

6

dispute that Mr. Cavaliero satisfied the first two non-medical requirements and the parties do not object to the ALJ's finding that Plaintiff's date last insured was December 31, 2008. (Tr. 19.)

To determine a claimant's rights to either SSI or DIB,[4] the ALJ conducts a formal five-step evaluation:

(1)  if the claimant is working or doing substantial gainful activity, he cannot be considered disabled;

(2)  if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits his ability to do basic work activity, he is not disabled;

(3)  if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

(4)  if the claimant retains sufficient residual functional capacity ("RFC")[5] to perform his past relevant work, he is not disabled; and

(5)  if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, he is not disabled.

20 C.F.R. § 416.920(a)(4); *see also* Morales, 225 F.3d at 316.

In steps one, two, and four, the burden is on the claimant to

---

[4]  The same test is used to determine disability for purposes of receiving either DIB or SSI benefits. Burns v. Barnhart, 312 F.3d 113, 119, n.1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under both programs.

[5]  Briefly stated, residual functional capacity is the most a claimant can do despite his recognized limitations. Social Security Ruling 96-9p defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."

present evidence to support his position that he is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[6] Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Following the prescribed analysis, Judge Kenworthy first concluded Mr. Cavaliero had not engaged in substantial gainful activity since August 31, 2005, the date on which he had his mountain bike accident. (Tr. 19.) In resolving step two, the ALJ found that as of the date of the hearing, Mr. Cavaliero suffered from only one severe impairment, i.e., a herniated nucleus pulposus in the cervical spine. (Id.) Although he also considered Plaintiff's mental impairments at this step, he concluded Plaintiff's depression, anxiety, and substance abuse disorder, considered singly or in combination, did not cause more than minimal limitations in his ability to perform mental work activities and therefore were non-severe. (Tr. 20-21.)

At step three, the ALJ concluded none of Plaintiff's impairments, considered singly or in combination, satisfied the criteria of any relevant Listing.[7] That is, Plaintiff's

---

[6] Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. Sykes, 228 F.3d at 263, n.2, *citing* Bowen v. Yuckert, 482 U.S. 137, 146-147 n.5 (1987).

[7] Although the ALJ did not specifically identify the Listings to which he compared Mr. Cavaliero's impairments, it is clear from the context that he properly considered Listing 1.04, disorders of the

8

musculoskeletal impairments had not resulted in any muscle atrophy or significant neurological defects and had not affected his ability to ambulate or use his upper extremities effectively despite some mild limitations resulting from numbness in his fingers. (Tr. 21.)

At step four, the ALJ concluded Plaintiff retained the residual functional capacity

> to lift up to 25 pounds occasionally and 15 pounds frequently. He can stand and/or walk four to six hours out of an eight hour day, with an opportunity to change positions after 30 minutes. He can sit for four to six hours per day with an opportunity to change positions at intervals of 60 minutes. He cannot crawl or crouch and would have some difficulty performing activities requiring feeling due to neuropathy in his hands. Further, the claimant is limited to the performance of simple, repetitive activities that would not involve a rapid production pace or similar sources of a high level of work stress.

(Tr. 21.)

The ALJ further concluded that because Plaintiff was limited to light work, he could not perform his past relevant work as a supermarket stock manager or carpenter, both of which were considered medium to heavy exertional work. (Tr. 24.) However, based on Plaintiff's age, high school equivalent education, work experience, residual functional capacity, and the vocational expert's testimony, the ALJ concluded that jobs existed in

_____

spine, Listing 12.04 pertaining to affective disorders, including depression, and Listing 12.06, pertaining to anxiety-related disorders.

9

significant numbers in the national economy which Mr. Cavaliero could perform despite his limitations. (Tr. 25.) Thus, Plaintiff had not been under a disability between August 31, 2005, and the date of the ALJ's decision and, consequently, was not entitled to benefits. (Tr. 23-24.)

B. Plaintiff's Arguments

Mr. Cavaliero raises five arguments in his brief in support of the motion for summary judgment. (Doc. No. 8, "Plf.'s Brief.") First, the ALJ erred in his conclusion that Plaintiff's mental health impairments were not severe, despite the findings of Dr. Robert L. Eisler who diagnosed Mr. Cavaliero with generalized anxiety disorder and major depressive disorder secondary to his spinal injury and associated pain syndrome. (Plf.'s Brief at 10-14.) Second, contrary to the well-established treating physician doctrine, the ALJ and the Appeals Council improperly disregarded the medical opinion of Plaintiff's physician, Dr. S. Balestrino, who indicated on October 2, 2007, that Plaintiff was disabled due to his depression and cervical disc disease. The ALJ also erred in rejecting the opinions of Dr. Eisler, the consultative psychologist who found Plaintiff disabled due to major depressive disorder. (Plf.'s Brief at 14-16.) Third, the ALJ erred at step five of his analysis by improperly determining that Plaintiff could perform light level work despite his mental and physical limitations which are supported by the medical findings. (Id. at 16-17.) Fourth,

10

Judge Kenworthy improperly rejected the testimony of the vocational expert in response to questions posed by Plaintiff's counsel at the hearing and relied on an incomplete hypothetical question in concluding that there were jobs available in the national economy Plaintiff could perform despite his limitations. (Id. at 18-19.) Finally, the ALJ erred by improperly evaluating and discrediting Mr. Cavaliero's subjective complaints of pain. (Id. at 19-20.)

We address each of these arguments in turn.

C. Analysis

1. *The ALJ's conclusion regarding Plaintiff's mental impairments:* We are not persuaded by Plaintiff's argument that the ALJ erred in finding his mental impairments were not severe and begin with a summary of the very minimal evidence regarding those impairments.

There is no evidence of any complaint of depression or anxiety prior to a consultative examination performed by psychiatrist Robert Eisler on July 31, 2007. Dr. Eisler noted that during the interview Plaintiff was cooperative and personable. He reported becoming "easily bored with no activities and watching TV." Despite the fact that he drank six to nine bottles of beer every evening in order to sleep, his sleep was interrupted every two or three hours. He was very forgetful, had dizzy spells, felt "burned out," and had thoughts of suicide. Mr. Cavaliero reported being "markedly distressed" about his disability and that he had

11

palpitations, chest pain, sudden cold sweats and a general feeling of anxiety. However, Dr. Eisler noted no flattened affect, loose associations, hallucinations, delusions, ideas of reference, thought transference, or other symptoms of a thought disorder or dementia. Plaintiff was able to recall three of four test memory words, had an adequate store of knowledge (names of presidents, compass directions, foreign cities, etc.), did "an excellent job" of serial sevens subtraction, could repeat a seven-digit number, did well with judgment questions and was probably of "higher than average intelligence." Mr. Cavaliero reported a good relationship with his three grown children and that he got along well with other people except his ex-wife.

Dr. Eisler concluded Plaintiff's symptoms reflected a major depressive disorder directly associated with his physical disability after the accident, generalized anxiety disorder and alcohol abuse. He found Mr. Cavaliero's prognosis was guarded and that his GAF at the time was 30.[8] He concluded Plaintiff was "unemployable at least for one year or more due to his medical conditions." (Tr. 188-189.)

Dr. Eisler also completed a form in which he indicated that while Plaintiff had good ability to relate to co-workers, deal with

---

[8] The Global Assessment of Functioning or GAF scale assesses how well an individual can function according to psychological, social, and occupational parameters, with the lowest scores assigned to individuals who are unable care for themselves. <u>Drejka v. Barnhart</u>, CA No. 01-587, 2002 U.S. Dist. LEXIS 7802, *5, n.2 (D. Del. Apr. 18, 2002).

12

the public, relate predictably in social situations and demonstrate reliability, he would have only fair or poor ability to follow work rules, interact with supervisors, deal with work stress, maintain attention and concentration, carry out job instructions at any level, maintain personal appearance, and behave in an emotionally stable manner. (Tr. 190-191.)

At the hearing, Plaintiff testified he had one friend with whom he had coffee when he went into town. (Tr. 215-216.) He experienced anxiety which caused him to be "short tempered" and "bark at people." His depressive symptoms began after he could not work and he stated he felt "sorry for himself" and "need[ed] something to do." (Tr. 219.) He also testified he had thoughts of suicide (id.), but was not asked any follow-up questions on this subject regarding the frequency and duration of such thoughts.

The ALJ accurately and completely summarized Dr. Eisler's report and concluded that the observations in the narrative portion thereof would indicate only mild limitations. (Tr. 20, 23.) He concluded Dr. Eisler's "check-the-box form" should be given no weight for several reasons. First, his comments were based in part on Plaintiff's physical limitations, an area in which Dr. Eisler apparently had no specialized training. Second, while the psychiatrist commented on alcohol abuse, he failed to evaluate the extent to which this abuse affected the other conclusions he reached. Third, Judge Kenworthy found "an utter lack of any

13

rational connection between the observations in the doctor's letter. . . and his conclusions on the form." (Tr. 23.)

In the absence of other objective evidence of Plaintiff's mental impairments, Judge Kenworthy considered the criteria of Listing 12.04 and 12.06 vis-a-vis other evidence in the record. He concluded based on this comparison that Plaintiff had only mild limitations in his activities of daily living, no limitations in his social functioning or his concentration, persistence or pace, and had experienced no episodes of decompensation. (Tr. 20-21.) He concluded the mild limitations supported by Dr. Eisler's narrative report could be accommodated by limiting Plaintiff to simple repetitive tasks which did not involve a rapid production pace or similar high level of work stress and, in fact, incorporated this finding in his residual functional capacity analysis. (Tr. 24, 21.)

Plaintiff argues that the ALJ erred at step two by finding that his mental impairments were not severe. According to Social Security regulations, an impairment is severe if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." In contrast, an impairment is considered no more than "a slight abnormality" if it has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience. See 20 C.F.R. §§ 404.1520(c) and 416.920(c). As the Third Circuit Court

14

of Appeals has held, an impairment, once established, must be considered "severe" unless the evidence demonstrates that it is merely a "slight abnormality," having "no more than a minimal effect on an individual's ability to work." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546-547 (3d Cir. 2003). "Reasonable doubts on severity are to be resolved in favor of the claimant." Id.

Here, the only medical evidence on which Plaintiff can rely for the argument that his depression and anxiety are severe is the one-time consultative examination by Dr. Eisler, which, as the ALJ pointed out, is inconsistent with the other substantial evidence in the record. We agree with the reasons given by the ALJ for rejecting Dr. Eisler's opinion, and further note that the doctor's narrative report itself is internally inconsistent. For instance, at the time of the examination, he considered Plaintiff's GAF to be 30. (Tr. 189.) A GAF between 21 and 30 reflects behavior which "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *See* the on-line version of DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), Multiaxial Assessment, American Psychiatric Association (2002), at www.lexis.com., last visited June 10, 2009. Dr. Eisler explicitly noted that Plaintiff did not report delusions or hallucinations and

that he got along well with people except his former wife; there is nothing in the psychiatrist's report to indicate an inability to function in social or daily activities. Moreover, the responses on the form Dr. Eisler completed, as the ALJ pointed out, contradict his narrative report. For instance, on the form he indicated Plaintiff would have only fair ability to maintain attention and concentration, yet in the narrative report Mr. Cavaliero was described as doing "an excellent job" on the standard test for concentration, counting backwards by sevens from one hundred; he purportedly had only fair ability to use judgment, yet was described as doing well on both judgment questions in the narrative; he would have poor or no ability to remember work-related instructions, yet remembered words, named several presidents, identified foreign cities, and repeated a seven-digit number.

It should also be noted that Plaintiff did not allege any limitations due to mental impairments when he completed a disability report form in October 2005. (Tr. 66-67.) As Plaintiff points out in his brief, this application was filed less than two months after his mountain bike accident and his depression only began to manifest itself after it became clear that he would not be able to return to work. (Plf.'s Brief at 11-12.) However, we note that in the request for a hearing before the ALJ, completed by Plaintiff's attorney and signed by Mr. Cavaliero on February 13,

2006, the only stated limitation on his ability to work was his "severe neck and back pain." (Tr. 41.) Similarly, a request for assistance in arranging a consultative examination submitted to the ALJ on approximately May 17, 2007, by Plaintiff's counsel does not include a mental evaluation, again referring only to his cervical fracture and disc herniation. (Tr. 178.)

We conclude the ALJ did not err by finding Plaintiff's depression and anxiety were not severe impairments. Moreover, even if this conclusion by the ALF were erroneous, we find no reason to remand for further consideration because the ALJ did incorporate in his RFC description the non-exertional limitations typically associated with mild depression or anxiety, i.e., a restriction to positions which did not require more than simple repetitive activities performed in a low-stress environment.

2. *The ALJ's consideration of Dr. Eisler's and Dr. Balestrino's opinions:* Plaintiff argues that contrary to the well-established treating physician doctrine, the ALJ and the Appeals Council improperly disregarded the medical opinions of Dr. Eisler and Dr. Balestrino. We have already found the ALJ did not err in his conclusions regarding Dr. Eisler's opinions and will not revisit that issue. Moreover, it is clear Dr. Eisler was not a treating physician whose opinion is generally to be given

17

substantial or even controlling weight.[9] As to Dr. Balestrino's opinion, we conclude the ALJ could not have erred by rejecting a report he did not have at the time of his decision, nor did the Appeals Council err by rejecting that report.

First, the medical records of Dr. Balestrino consist solely of a two-page employability assessment form completed on or about October 9, 2007, in which he indicated Plaintiff was temporarily disabled due to depression and cervical disc disease. (Tr. 206-

---

[9] Social Security regulations identify three categories of medical sources - treating, non-treating, and non-examining. Physicians, psychologists and other acceptable medical sources who have provided the claimant with medical treatment or evaluation and who have had an "ongoing treatment relationship" with him are considered treating sources. A non-treating source is one who has examined the claimant but does not have an ongoing treatment relationship with him, for example, a consultative examiner who is not also a treating source. Non-examining sources, including state agency medical consultants, are those whose assessments are premised solely on a review of medical records. 20 C.F.R. § 404.1502. Social Security regulations also carefully set out the manner in which medical opinions are to be evaluated. 20 C.F.R. § 404.1527(d). In general, every medical opinion received is considered. Unless a treating physician's opinion is given controlling weight, the ALJ will consider (1) the examining relationship (more weight given to the opinion of an examining source than to the opinion of a non-examining source); (2) the treatment relationship (more weight given to opinions of treating sources); (3) the length of the treatment relationship and the frequency of examination (more weight given to the opinion of a treating source who has treated the claimant for a long time on a frequent basis); and (4) the nature and extent of the treatment relationship (more weight given to the opinions of specialist than to generalist treating sources.) 20 C.F.R. § 404.1527(d); *see also* Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (it is well-established that an ALJ "must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all.") The opinions of a treating source are given controlling weight on questions concerning the nature and severity of the claimant's impairment(s) when the conclusions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).

18

207.) There are no objective medical records to support the report, no mention of Dr. Balestrino in previous medical records, nor any indication of his specialty, the length of his treatment relationship with Plaintiff, or any of the other factors to be considered when ascertaining the weight to be given to a medical opinion. *See* Mason v. Shalala, 994 F.2d 1058, 1065-1066 (3d Cir. 1993) (employability assessment forms without detailed explanations or treatment notes are entitled to little weight.)

Second, Dr. Balestrino's report indicating that Plaintiff was temporarily disabled for purposes of receiving state welfare benefits is irrelevant to the decision of the ALJ. Although such an opinion may and should be considered, it is not binding on the Administration. *See* 20 C.F.R. §§ 404.1504 and 416.904.

Finally, in its letter declining to remand the matter for further consideration, the Appeals Council noted it had considered Dr. Balestrino's report, but found no reason therein to change the ALJ's decision. (Tr. 6-8.) Moreover, the Appeals Council was not required to consider this evidence; under 20 C.F.R. § 404.970(b), the Council need only consider "new and material" evidence which "relates to the period *on or before* the date of the administrative law judge hearing decision" (emphasis added.) Dr. Balestrino's report pertains to the one-year period beginning October 2, 2007, almost two months after the ALJ's decision.

In short, for numerous reasons, we find Plaintiff's second

argument in support of his motion for summary judgment to be entirely unpersuasive.

3. *The ALJ's finding that Plaintiff could perform light level work:* Plaintiff argues there is "substantial evidence" he is not able to do even light work. He contends a RFC can only be determined where there is substantial evidence of each physical requirement listed in the regulations and that in this case, there is no such evidence. Moreover, his mental health impairments would further limit his ability to do any work activity on a sustained basis. Again, we find this argument unpersuasive.

As previously noted, the ALJ found Mr. Cavaliero had the capacity to lift up to 25 pounds occasionally and 15 pounds frequently, to stand and/or walk for four to six hours in an eight-hour day (assuming the opportunity to change positions after 30 minutes), and to sit for four to six hours a day with the opportunity to change positions at 60 minute intervals. He further found that Plaintiff could not crawl or crouch and would be precluded from some manual activities because of neuropathy in his hands. (Tr. 21.)

According to Social Security regulations, light work involves

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the

ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

A person who is able to do light work is also assumed to be able to do sedentary work unless there are limiting factors such as loss of fine dexterity or the inability to sit for long periods of time. Id.

In his brief, Plaintiff fails to point to the "substantial evidence" on which he relies for his contention that he is unable to perform light work. We conclude that to the contrary, there is evidence to support the ALJ's conclusion that Mr. Cavaliero could perform light work.[10]

As noted above, on September 29, 2005, Dr. Bellotte indicated in a Medical Assessment Form prepared for the Pennsylvania Department of Public Welfare that Mr. Cavaliero was temporarily disabled until January 2, 2006 (i.e., approximately three months) due to his cervical fracture and was precluded from any lifting. (Tr. 146-147.) In the notes from his final examination on November 28, 2005, Dr. Bellotte reported that it was "reasonable" for Plaintiff to remove the cervical spine collar inasmuch as he had

---

[10] Technically, the finding that Plaintiff could lift and carry 25 pounds occasionally and 15 pounds frequently places this portion of the RFC determination somewhere between the light and medium exertion levels. See 20 C.F.R. § 404.1567(b), defining medium work as requiring the ability to lift up to 50 pounds occasionally and to lift and carry up to 25 pounds frequently. However, a person considered capable of medium work is also deemed able to perform light work, therefore, this inconsistency between the ALJ's findings and the regulations is not grounds for reversal.

21

non-tender full range of motion in his neck. While he discussed the fact that Plaintiff was at "somewhat increased risk" for additional spinal cord injury from even relatively minor trauma, there is no indication that Dr. Bellotte was suggesting Plaintiff could not return to work as of January 2006 or that he was in any way unable to work. (Tr. 181-182.)

After Mr. Cavaliero applied for Social Security benefits, he underwent a physical consultative examination by Dr. Samuel I. Han on December 8, 2005. (Tr. 148-153.) Plaintiff told Dr. Han he was not allowed to bend his neck or do any heavy lifting, but he could do light housework and walk without any assistive device. He denied frequent headaches but reported occasional dizziness and blurred vision along with "back pain and neck pain at times." (Tr. 149.) Dr. Han noted Plaintiff's documented history of cervical fracture, C4-C5 disc herniation, and numbness in his arms and legs which could be due to compression of the spinal cord. Dr. Han also completed a "Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities" questionnaire in which he indicated Plaintiff could lift and carry up to 10 pounds frequently, stand and walk four hours during an eight hour day, and sit eight hours with a sit/stand option. He had postural limitations in his ability to balance or climb and was restricted to work environments which did not involve heights, moving equipment, vibrations, fumes, odors or gases. (Tr. 154-155.)

22

A second consultative physical examination was conducted on May 3, 2007, by Dr. Ellen Mustovic. (Tr. 163-168.) Plaintiff told Dr. Mustovic that following his release by Dr. Bellotte, he had received no further treatment or medical consultation regarding his neck, did not have additional physical therapy, did not consult a chiropractor, and did not take any medications stronger than aspirin for his neck pain.[11] He reported constant pain in his neck; tingling in his hands when he turned his head rapidly and at other times; intermittent pain radiating down both arms; and headaches every several days which lasted from one hour to all day long. He also reported low back pain dating from a vehicular accident in 1989 which intensified after his mountain bike accident in 2005 and intermittent right knee pain dating from another motor vehicle accident at age 16. He indicated the lower back pain was getting progressively worse, but he had received no further treatment for that or his knee pain. Dr. Mustovic also noted reports of intermittent momentary episodes of dizziness "every several weeks" and poor sleep secondary to pain. She concluded that Plaintiff had restrictions based on his neck and low back and neuropathy in his hands related to the degenerative changes in his spine.

---

[11] Plaintiff reported to the consultative physicians and testified at the hearing that he had not received medical treatment in part because after his accident in 2005, he was terminated from his job as a supermarket stock manager and lost his medical insurance. Furthermore, after the accident he lived with his parents whose their income level apparently precluded his eligibility for Medicaid or other public medical assistance. (Tr. 164; 220-221.)

Like Dr. Han, Dr. Mustovic completed a questionnaire regarding Plaintiff's ability to perform work-related physical functions. (Tr. 170-173.) She concluded Plaintiff could occasionally lift and a maximum of 25 pounds and 15 pounds occasionally; could stand and walk four to six hours a day with a change of position every 30 minutes; and could sit for the same period with change of position every 60 minutes. He could not balance, crouch or crawl and had limitations on his ability to feel due to bilateral neuropathy in his little fingers and the ulnar side of his hands. He could not work where he would be exposed to vibration, heights, or cold.

In his decision, Judge Kenworthy clearly adopted the limitations identified by Dr. Mustovic in her May 3, 2007 report. These are largely consistent with Dr. Han's findings from December 2005 and, most significantly, there is no medical evidence to contradict those findings, Dr. Eisler's comments about Plaintiff's physical limitations notwithstanding. Other than Dr. Bellotte's opinion immediately after the accident that Plaintiff could not lift any amount of weight, there is no medical evidence to support the conclusion Plaintiff was precluded from performing light work. We conclude that the ALJ did not err in his RFC analysis by adopting the limitations Dr. Mustovic identified.[12]

4. *The ALJ's improper reliance on an incomplete*

---

[12] We recognize that the RFC analysis does not preclude work environments in which Plaintiff would be exposed to vibration, heights or cold temperatures. However, Plaintiff does not raise this argument and the Court declines to do so on his behalf.

*hypothetical question:* Plaintiff argues that at the hearing, his attorney posed several questions which incorporated restrictions on his ability to work on a regular, ongoing basis. These included (1) the need to lie down two or three times a week to alleviate his headaches; (2) the need to lie down more than 10 percent of the day due to pain; (3) the inability to deal with work stresses; (4) the inability to interact with supervisors; (5) the inability to follow work rules; and (6) the inability to understand, remember and carry out even simple job instructions. In each case, the vocational expert who testified at the hearing stated that such a limitation would effectively preclude any form of substantial gainful activity. (*See* Tr. 225-227.)

In his decision, the ALJ stated that he found that the hypothetical questions propounded by Plaintiff's attorney were not supported by substantial evidence. (Tr. 25.)

It is clear that limitations three through six above are based only on Dr. Eisler's report which we have agreed was appropriately given little or no weight by the ALJ. Although Plaintiff reported to Dr. Mustovic that he experienced headaches every several days, he did not indicate that he needed to lie down to alleviate them. At the hearing, Mr. Cavaliero testified that he got a headache when he was "sitting and trying to read something or watching TV for. . .more than an hour," at which point he had to nap or take more over-the-counter pain medication. (Tr. 213; *see also* Tr. 216 for

25

Plaintiff's testimony that he started to get headaches "after an hour of reading" and Tr. 218, that staring at a computer screen gave him a headache.) He also testified that two or three times a week, when he had a headache, he would take an aspirin and it would sometimes "go away in an hour" but occasionally last all day. (Tr. 218.) In sum, even Plaintiff's own testimony does not support the hypothetical posed by his attorney that he must lie down regularly to alleviate his headaches.

Similarly, there is no evidence to support Plaintiff's claim that he needs to lie down more than 10 percent of the day due to pain. Mr. Cavaliero did not mention such a need to any of the consulting physicians. He testified that when he watched television, he was "always in a recliner or on the couch with [his] feet up" (Tr. 216) and that he had problems sitting with his feet on the floor for more than an hour because of pain in his hip (Tr. 218.) He also testified, however, that he took only motrin for pain (Tr. 214), helped his mother around the house (Tr. 214), was able to take a bus into town and walk around for 20 to 30 minutes with rest stops throughout the day (Tr. 215), had coffee regularly with a friend (Tr. 216), and went shopping with his father (Tr. 219). In short, Plaintiff's testimony about his activities of daily living contradicts his attorney's question which assumes he spends 10 percent of the day lying down to alleviate pain.

While a proper hypothetical question must include all of the

26

limitations supported by the objective medical evidence, it need not include limitations based only by a claimant's subjective reports. *See* Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002); Chrupcala v. Heckler, 829 F.2d 1269, 1271, 1276 (3d Cir. 1987). We conclude the ALJ did not err by rejecting the Vocational Expert's responses to the hypothetical questions posed by Plaintiff's attorney at the hearing.

5. *The ALJ's evaluation of Plaintiff's subjective complaints of pain:* Mr. Cavaliero argues that the medical evidence supports his subjective complaints of very severe pain and, contrary to established Third Circuit law, the ALJ erred by failing to state his rational basis for discounting those subjective complaints. However, Plaintiff's argument is undercut by his own list of the ALJ's precise reasons for concluding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

As Plaintiff notes in his brief, in arriving at his credibility determination, the ALJ relied on the facts that (1) Mr. Cavaliero had not seen a physician for his back and neck pain since his last follow-up appointment with Dr. Bellotte in November 2005, nor had he consulted any mental health practitioner prior to his one-time examination by Dr. Eisler in July 2007; (2) Plaintiff takes only over-the-counter medication for pain relief; (3) he had indicated to the Commonwealth of Pennsylvania when applying for

27

unemployment compensation benefits soon after his accident that he
was capable of lifting and carrying up to 10 pounds; and (4) his
activities of daily living are inconsistent with a person who is
severely disabled. (Plf.'s Brief at 19-20, *see also* Tr. 22-23.)
Where the ALJ has stated reasons which are consistent with the
record for his credibility determination, this Court will not
disturb that determination unless it is "patently wrong." Schmidt
v. Barnhart, 395 F.3d 737, 746-747 (7th Cir. 2005).

Having concluded that none of Plaintiff's arguments provides
a reason for this Court to reverse the ALJ's decision denying
benefits or to remand for further consideration, Plaintiff's motion
for summary judgment is denied and Defendant's motion is granted.
An appropriate order follows.

June ___*15*___, 2009                    *William J. Standish*

William L. Standish
United States District Judge

28